119 So.2d 749 (1960)
GULF STREAM PARK RACING ASSOCIATION, INC., a Florida Corporation, Appellant,
v.
Hugh F. MILLER, Appellee.
No. 1085.
District Court of Appeal of Florida. Second District.
March 30, 1960.
Rehearing Denied April 25, 1960.
*750 Hill, Welsh, Cornell, Ross & Pyszka, and A. Judson Hill, Miami, for appellant.
Hector, Faircloth & Rutledge and Ronald W. Jabara, Miami, for appellee.
BARKER, ROGER A., Associate Judge.
This was a negligence action brought by the appellee for injuries received when a horse racing on appellant's track bolted the rail and struck appellee. The owner of the horse was also named as a defendant, but service was not perfected against her. A motion to dismiss the complaint was denied; an answer was filed; and subsequently a motion for summary judgment on behalf of the defendant-appellant was also denied. A jury trial resulted in a verdict of $15,000, and subsequently costs were taxed against the appellant. New trial was denied as well as a motion for judgment non obstante veredicto, and this appeal was instituted.
The appellant operates a horse racing track in Broward County. This is an oval track with the stands located on the west side. The west leg of the oval extends straight north beyond the curve of the oval, making a "straightaway" track. The track is enclosed by an inside and an outside wooden rail about 3 1/2 feet high. In connection with the racing, appellant maintains barns and facilities for stabling race horses. These barns and stables are located north of the oval along side the extended portion of the straightaway about 100 to 150 feet from the straightaway. The race horses enter and leave the track through a gate in the rail of the straightaway. This gate actually consists of a movable section of the rail.
Appellee was employed by Beacon Stables, one of the owners that raced horses at the track. His duties were that of a hot walker, that is, he walked the horses to cool them down after the races, although when not thus engaged he performed other work which might arise. At the time of the accident appellee was 60 years old and had spent five years working with horses. He was not employed in any way by the appellant track, but he worked on the premises belonging to the track in the area where the horses were kept.
Race track and stable personnel customarily viewed the races from an area along the inside rail of the straightaway in the vicinity of the gate leading onto the track. These viewers consisted of grooms, hot walkers, horse owners, trainers, guests of horse owners, etc., and they congregated in numbers of about 75. The track kept a guard to see that unauthorized persons did not congregate in this area and to keep these viewers from getting too close to the rail.
In front of the grandstand there is a restraining wire fence situated six feet behind the rail to prevent horses from jumping through into the area occupied by the spectators, but this fence is not constructed along the area of the straightaway near the entrance gate where track and stable personnel customarily view the races.
*751 The accident occurred during a maiden race of two year olds. These two year old horses are inexperienced and highly nervous and excitable. The record indicates that they have a tendency to want to return to the safety of their barns; so when they are raced past their stables or the gates leading onto the track they often swerve toward their barns and may topple over the rail.
The appellee left his normal area of work at a barn and proceeded to the area where stable personnel customarily viewed races. There was a group of people there to observe a race of two year old horses on the straightaway. The post of duty of the guard was about 300 feet away. As the lead horse passed by, appellee turned to leave. Almost immediately he was struck from behind and injured by another horse which had bolted the rail. The jockey of the horse that struck appellant was experienced but was unable to control the horse and was thrown.
The case was predicated on the alleged negligence of the appellant in failing to provide a safe place for appellee to work or in failing to provide adequate safeguards, in view of the tendency, known by the appellant, of the horses to jump the railing into the area from which the stable personnel viewed the races. The answer, of course, asserted contributory negligence and assumption of risk.
There is a sharp division of opinion between appellant and appellee as to whether the appellee occupied the position of an invitee or licensee at the time and place of the accident. We are of the view that since appellee worked on the premises belonging to the track in the area where the horses were kept and his duties were connected with appellant's business activities, he was an invitee; and the mere fact that he left his immediate work area temporarily to witness a horse race occurring 100 to 150 feet away did not change his category of that of an invitee to a mere licensee.
In 52 Am.Jur., Theaters, Shows, Exhibitions, Etc., section 69, pp. 313-314, it is stated:
"It is the duty of persons conducting a racing exhibition to keep the race track and adjacent premises to which patrons are invited reasonably safe and free from dangers which are likely to arise during or in consequence of the races; but they are not liable where injuries result from unavoidable accidents, or where such persons are not shown to have been negligent in any respect which proximately caused their injuries. This includes, in respect to horse racing tracks, the duty to provide sufficient barriers, guards or watchmen, and equipment to protect spectators from injury by horses about the place."
Although appellee was not a patron he was a business invitee, and the appellant owed him the same duty to use reasonable care and precaution under the particular circumstances as a reasonable and prudent person would do under similar circumstances. In the instant case the barriers were arranged differently for the particular class of spectators of which appellee was a member than were the barriers in front of the grandstand. Race track and stable personnel customarily viewed the races from an area along the inside rail of the straightaway in the vicinity of the gate leading onto the track. Appellee was in this area and among this class of spectators when he was hurt. He knew the propensities of the two year old race horses participating in a maiden race to be highly nervous and excitable, with a tendency to want to return to the safety of their barns, and that they often swerved toward their barns and toppled over the rail. These propensities were also known by the appellant and the race track and stable personnel.
In 52 Am.Jur., Theaters, Shows, Exhibitions, Etc., section 56, p. 299, it is stated:

*752 "Since the basis of a proprietor's liability for injury to an invitee is his superior knowledge, if the invitee knows of the condition or hazard the proprietor is under no duty to warn him and no liability for resulting injury, since the invitee has as much knowledge as the proprietor and by voluntarily acting in view of his knowledge assumes the risks and dangers incident to the known conditions. * * *"
Justice Thornal, in Byers v. Gunn, Fla. 1955, 81 So.2d 723, 727, in discussing the distinction between contributory negligence and assumption of risk, said:
"At times the line of demarcation between contributory negligence and assumption of risk is exceedingly difficult to define. A generally safe rule to follow is that the latter involves a choice made more or less deliberately and negatives liability. Contributory negligence, on the other hand, implies the failure of the plaintiff to exercise due care. Some courts have stated that assumption of risk is a mental condition of willingness, whereas contributory negligence is more a matter of conduct.
"Ordinarily the doctrine of assumption of risk pertains to controversies between masters and servants although it may be applicable in other cases. Theoretically, it rests upon a contract or if not exclusively upon a contract, it involves an act done so spontaneously by the party against whom the defense is asserted that he amounts to a volunteer and any evil result of his act must be attributable to an exercise of his free volition instead of to the conduct of his adversary. * * *"
In Night Racing Ass'n v. Green, Fla. 1954, 71 So.2d 500, 503, Justice Matthews stated:
"Not every injury from an accident gives to the injured party a cause of action for the negligence of someone else. The owner of property is not an insurer of the safety of everyone who comes upon the property under all circumstances. The owner of the property or the one having control of the property was not required to maintain it in such a condition that an accident could not possibly happen. * * *"
Appellee, under the undisputed facts and circumstances disclosed by this record, was obligated to exercise a reasonable duty to care for his own safety. It appears that appellee assumed the risk of his injury by being present at the time and place with full knowledge of the hazards attending that particular race. Furthermore, by placing himself in the position where he assumed the risk, he was guilty of negligence which proximately contributed to his injury by turning his back while the race was in progress.
We therefore conclude that since it was clearly established that appellee had assumed the risk of his injury and was guilty of negligence which proximately contributed to his injury, appellant's motion for judgment non obstante veredicto should have been granted.
Reversed with directions to the lower court to vacate the final judgment appealed from and for entry of a judgment non obstante veredicto in favor of appellant.
ALLEN, C.J., and KANNER, J., concur.