449 So.2d 491 (1983)
Dennis John RICHOUX, et al., Plaintiffs-Appellants,
v.
Clement HEBERT, et al., Defendants-Appellees.
No. 83-192.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
Rehearing Denied January 13, 1984.
Writ Denied March 16, 1984.
*493 Richard C. Broussard of Domengeaux & Wright, Lafayette, for plaintiffs-appellants.
Ronald J. Bertrand, Rayne, Albert L. Boudreau, Jr., Gordon P. Sandoz, II, Jan F. Rowe, Abbeville, for defendants-appellees.
Before DOUCET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
In this personal injury action, Dennis Richoux brought suit on behalf of his minor son, Brandon, then age three, who was injured when a horse, racing at Cajun Downs Racetrack, came over the rail and fell on him, resulting in serious injury. The trial judge found negligence on the part of Onil Boudreaux, as operator of the track, and Virgil Vice, owner of the horse, and these two defendants were held liable in solido to the plaintiff in the sum of $100,000 plus medical expenses. The trial judge also found the following defendants free from fault: Clement Hebert, owner of the racetrack; and Larry Begnaud, puller of the starting gates.
From the aforementioned judgment, the plaintiff has perfected the present devolutive appeal alleging the following specifications of error: (1) The trial court erred in finding Clement Hebert was not the operator of the track; (2) The trial court erred in finding Clement Hebert was not vicariously liable for the torts of Onil Boudreaux and Larry Begnaud; (3) The trial court erred in finding that Larry Begnaud was not negligent in opening the starting gates in view of the position of the horse ("Speedy Bar Jack") and his jockey; (4) The trial court erred in finding that the race track was not vested with vices in its original construction and furthermore, the court erred in not finding Clement Hebert liable as designer, builder, owner and maintainer of the track; and (5) The trial court erred in awarding general damages of only $100,000.
The procedural history of the case is as follows: Plaintiff filed suit wherein named defendant was Clement Hebert, owner of Cajun Downs, who was alleged to be negligent in the operation of a dangerously constructed track, releasing the horses before they were ready, failing to keep spectators from entering a dangerous area, and in entrusting the gate opening operation to an inexperienced employee. Hebert third partied Virgil Vice, the owner of the horse which struck the child, alleging that as owner of an animal he is liable for any damages caused by that animal. Vice made plaintiff Dennis Richoux a third party defendant, alleging that he was negligent in failing to adequately supervise his minor son. Vice also alleged plaintiff assumed the risk of injury to his son. Plaintiff thereafter amended his petition to name Vice a defendant, claiming he was negligent in starting his horse in the fashion he did. Vice, in turn, made Hebert a third party defendant, making the same allegations originally made by Richoux. Hebert made plaintiff a third party defendant on the basis of the same negligence alleged by Vice in his third party petition *494 against plaintiff. Vice then amended his petition to name Onil Boudreaux, as operator of the track, and Larry Begnaud, the puller of the gates, third party defendants. In answer Boudreaux claimed the accident was caused by either the sole or concurring negligence of Richoux, Vice, Hebert, and/or Begnaud. In a separate action, Richoux filed suit against Boudreaux and Begnaud, claiming that their negligence in operating the track in a hazardous fashion, opening the gates before the horses were prepared, operating the starting gates in a hazardous fashion, and in otherwise operating the track to allow horses to run into the spectator area caused the damages complained of. Not named as defendant was, inter-alia, the jockey involved, Shane Sellers. The cases were consolidated for trial.
Cajun Downs is what is commonly known as a "country" race track, or "bush" track. It is a straight track approximately one-half mile in length. It can accommodate six horses although at the time of the accident only four horses were racing. The railing is made of 2½ inch drill pipe with a gap between the starting gates and railing used to get the horses onto the track and into the starting gates. This gap is closed before a race by means of a flexible pipe approximately 1½ inches in diameter.
Halfway down the track is a concession stand operated by Hebert.
On Sunday, March 8, 1981, Dennis Richoux took a number of his children to Hebert's "Cajun Downs" racetrack. Many children attend the races with their parents, and they generally play in an area to the side of the track near Hebert's house, although they are not restricted to this area. Richoux left his children to play with the others, and began watching the races. Some time later, he left the track for 5-10 minutes, and then returned. He walked toward the house, saw his children, and then returned to his truck, which was parked near the starting gates, for cigarettes. Brandon and another of Richoux's children apparently followed him.
Meanwhile, a race was about to start. Four horses had entered the starting gates, including Vice's "Speedy Bar Jack", and the sliding pipe gate had been closed. Something was apparently wrong, for the horses were taken out and reloaded into the gates a second time. The race was apparently delayed when one of the assistant starters was injured. Richoux stopped to watch from a position near the back of the starting gates, while the two children continued to walk back towards the house. The race started, and the horse in the gate nearest the left rail ("Speedy Bar Jack") immediately veered to the left, went over the sliding pipe, and landed on Brandon, who was some five or six feet behind the rail, away from the track. Brandon had been struck in the head by the hooves of the horse. When his father picked him up, he was motionless, his eyes rolled back and portions of his brain protruded through the shattered skull.
Brandon was rushed to the hospital where his neurosurgeon diagnosed a compound depressed skull fracture with cortical lacerations. Treatment followed. He experienced temporary blindness, a possible seizure, impairment of the hands and legs and a distended abdomen. Subsequently, Brandon was released from the hospital with instructions to take anticonvulsant medication. A cranioplasty later became necessary and was eventually performed at a charitable hospital in Texas. Dr. Rivet, Brandon's neurosurgeon, diagnosed permanent brain damage, however, due to the child's age, he was unable to predict the degree of any learning disability.
In addition, Brandon was placed in traction for fracture of the left femur and was later placed in a body cast. He has also seen a pediatric psychiatrist, due to emotional problems related to confinement, and another physician specializing in physical medicine and rehabilitation. As a result of his brain injury, his doctors recommend he wear protective head gear when engaged in potentially traumatic activity and he continues to take Phenobarbital to prevent seizures. Other physical disabilities continue, including walking with a limp.
*495 As aforementioned, all defendants alleged that Dennis Richoux was negligent in allowing his son Brandon to wander into the spectator area unsupervised, and that this negligence caused the accident. The trial court rejected this defense, noting that the child was within a normal spectator area, several feet from the rail. Operator Onil Boudreaux contends that, as host, he is not liable to an invitee for the injury because the peril was apparent and the plaintiff, in the exercise of reasonable care, should have observed the danger and saved his child from it. However, the trial judge found otherwise, there appears to be no clear error in his decision, and moreover, none of the defendants have appealed or answered plaintiff's appeal. Nevertheless, we believe the plaintiff assumed only those risks ancillary to viewing horse racing in a manner consistent with the track's policy and, furthermore, the danger posed by the operation and maintenance of the track was not foreseeable.
Concerning the responsibility of Virgil Vice as the owner of the horse that injured the child, the trial judge applied the law as set forth in Holland v. Buckley, 305 So.2d 113 (La.1974). In that case it was held that owners are strictly liable for harm caused by their animals and liability may only be escaped by a showing that the harm resulted from some independent cause not imputable to the owner such as fault of the victim, fault of a third person, or a fortuitous event. La.C.C. Art. 2321. To exonerate the animal owner from liability, independent cause must be the sole cause of the damages. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978). The record indicates Vice knew of the dangerous propensity of "Speedy Bar Jack" to veer to the left. cf: Tamburello v. Jaeger, 249 La. 25, 184 So.2d 544 (1966); Winant v. Rogers, 256 F.Supp. 1020 (La.D.C.1966); Liner v. McEnery, 176 So.2d 786 (La.App.2nd Cir. 1965); Roberts v. Hartford Acc. & Indem. Co., 394 So.2d 696 (La.App.3rd Cir.1981). The trial court concluded there was no independent cause in this incident which could be deemed to be the "sole cause" of the damages, and accordingly, Virgil Vice was held liable. This ruling is also final.
Another issue presented at the trial court was whether Vice's horse was in a position to start the race when the gates were opened or whether Larry Begnaud, as gate opener was negligent in opening the gate before all the horses and their jockeys were in a proper position to start the race. The trial court was of the opinion that it is ultimately the gate puller's responsibility to ascertain that the horses are indeed in a position to safely start the race and found as fact that "Speedy Bar Jack" was in a reasonable starting position. In reaching this result the trial judge noted that the evidence on the point of whether the horse was ready to start was at best conflicting and contradictory, however, the preponderance of evidence was that Vice's horse was in a reasonable starting position when the gates were opened by Begnaud. From this ruling, plaintiff has appealed alleging the trial court erred in finding Begnaud free from fault in starting the race when he did. However, both Boudreaux and Begnaud testified the horses were in starting position when the gate was opened. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, a reviewing court will not disturb the factual finding on appeal in the absence of manifest error. The trial judge herein was in a better position to evaluate the conflicting testimony and the witnesses' credibility and we detect no clear error in this ruling. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Concerning the liability of Onil Boudreaux, this defendant testified he is in charge of operating Cajun Downs racetrack. Although operators are not the insurers of the safety of their patrons, they must conduct their operations in such a way as to not expose the patron to an unreasonable risk of harm, considering the nature of the facilities provided. Dorry v. Lafleur, 387 So.2d 690 (3rd Cir.1980), reversed on other grounds, 399 So.2d 559 *496 (La.1981). Boudreaux stated that he knew Virgil Vice's horse had a propensity to run to the left. He was an experienced horseman and therefore must have known of the dangers confronting spectators along the rails whenever a horse with such a propensity is allowed to run a race. Considering the nature of the facilities provided (a single rail, with nothing to prevent spectators from watching races near the rail) the trial court concluded that Boudreaux, by allowing this particular horse to run without making absolutely certain no one was near the rail, exposed patrons who were near the rail to an unreasonable risk of harm, thus breaching his legal duty and this breach was a proximate cause of the child's damages. As aforementioned, this ruling is final inasmuch as Boudreaux neither answered the appeal nor appealed.
Regarding plaintiff's contention that Hebert is vicariously liable for Onil Boudreaux's negligence, the trial judge found the latter was an independent contractor and, therefore, Hebert was not liable for his acts. The trial judge noted that Boudreaux collected the gate receipts from which he paid his employees and kept 10% for himself. The remainder was distributed to the various horse owners competing on that day. Hebert took no percentage as owner. Furthermore, Hebert did not pay Boudreaux anything for his work in operating the track. The record indicates that certain favors were exchanged between the two men, such as occasional feeding and caring for each other's horses. Plaintiff counters by noting that Hebert designed, built and maintains the track which is known as "Clement Hebert's Race Track" and it is his only source of income. By deposition prior to trial, Hebert testified "Yes. It's me that runs the track ..." Hebert also stated that if a friend wanted to run a race he would allow a race. Also, Hebert sells food and drinks at his concession stand and cleans up the track area. He personally requests that people stand away from the rail when he observes them on the rail. Hebert uses his own tractor to prepare the track surface for the weekend's races, owns the stables that are used for paddocks, and he has no leases to anyone nor any concession contracts. He pastures and feeds Boudreaux's horses at no expense as well as providing stud services for his mares at no charge.
At best, the evidence is conflicting as to the status between Hebert and Boudreaux. It appears their duties and responsibilities were distinct in this "joint venture". Hebert had only limited control over the work of Boudreaux and vice-versa. Where, as here, there is conflicting evidence we will not disturb the factual findings of the trial court. Canter v. Koehring, Co., supra.
Plaintiff advanced three theories under which Clement Hebert could be held liable: 1) strict liability under Civil Code Article 2322; 2) basic negligence in the design and operation of the track; and 3) vicarious liability for the negligence of Onil Boudreaux.
The trial judge opined that the strict liability imposed by La.C.C. Art. 2322 was inapplicable as the "injury did not result from the `ruin' of a building caused by `neglect to repair it' or by `a vice in its original construction'." To the extent the trial judge's reasoning infers that the article's application is limited to buildings, we note that courts have not construed the provision so strictly. The term "building" within the meaning of La.C.C. Art. 2322 refers to a structure with some permanence but it need not be suitable for habitation. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981); Boudoin v. Schwegmann Bros. Giant Supermarket, 371 So.2d 370 (La.App. 4th Cir.1971). Railings have been held to fall within the purview of this article when same is a necessary appurtenance to the structure. Boudoin v. Schwegmann Bros. Giant Supermarket, supra. A defect giving rise to liability under this article must be of such nature as to constitute a dangerous condition which would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Campbell v. Tidwell, 407 So.2d 1359 (La. App. 3rd Cir.1981). However, for reasons which follow, we find it unnecessary to address Art. 2322's applicability to the facts herein.
*497 The question then arises: Was Hebert negligent in the design of the track? Hebert testified that he designed the track from observations of the many other "bush" tracks in South Louisiana, nevertheless, it is hornbook law that compliance with the norm does not mean freedom from fault. There is no device to prevent spectator from approaching and observing the races from any point along the rails. The sliding pipe gate was extremely flexible as compared to the rest of the railing, indeed it was a water pipe 1½ inches in diameter. The horse was attempting to jump over the sliding pipe, the pipe bent, the horse's legs struck the pipe, and then the horse fell or rolled over the rail and on the child. Mr. Arthur Reed, an engineer who has designed tracks of all sizes, testified as to the need for a secondary fence to keep the public back from the rail. Mr. Reed's expertise was challenged on the grounds he had not personally viewed the track in question. However, Reed testified that the majority of tracks he was aware of contained a secondary fence to protect spectators. Hebert testified that he designed the track including the sliding pipe rail which he installed to replace previous railing using planks of wood.
"The general rule with regard to places of public amusement is that the proprietor of such a place, to which the public is invited and admission is charged, is under the obligation to use ordinary or reasonable care or diligence to put and maintain his premises and appliances in a reasonably safe condition for which they are intended and designed." 4 AM JUR 2d Amusements and Exhibitions, § 53. Liability may be predicated upon his failure to observe and fulfill a duty to inspect and discover the defect and he may be found liable for failure to warn spectators of dangers not known to them. id. at § 54.
"Anyone who invites the public to avail themselves of the use, for amusement or sport, of property owned or controlled by the invitor or in which he has a financial interest, has a duty to use reasonable care to see that the property is kept in a reasonably safe condition for the use of such invitees. Thus each joint adventurer is liable for the negligence of the other, and for the negligence of persons and agencies employed to accomplish the common purpose." id. at § 62.
"Horse races are of necessity attended with some risks and danger to spectators, and those who conduct races must take reasonable care to protect spectators from injury. A fair association may be held negligent in failing to properly inclose the track, or in failing to provide a fence of sufficient height to prevent a horse from jumping over it." id. at § 78.
An owner owes his invitee the duty of reasonable care which means the obligation of maintaining his premises in a condition reasonably safe for use consistent with the purpose of the invitation including the discovery of reasonably foreseeable conditions which may be dangerous and result in injury, especially where there is time to correct the perilous condition or give warning to the invitee of the danger. Kennedy v. Columbia Gas Co., 174 So.2d 869 (La. App. 1st Cir.1965) and cases cited therein. See also: Archote v. Travelers Ins. Co., 179 So.2d 658, 7 A.L.R.2d 704 (La.App. 4th Cir.1965). In Rosenberger v. Central Louisiana District Livestock Show, Inc., 312 So.2d 300 (La.1975) the Louisiana Supreme Court found that a rodeo supervisor and boss and their corporate employer were negligent in failing to check whether the gate of the rodeo facility was closed and that breach of duty was the proximate cause of injuries to a bareback bronco rider. While recognizing that bareback bronco riding is an extremely dangerous activity and the rider assumes the natural and ordinary risks of the type contest involved, the court found that he did not assume the risk of injury from negligent operations or maintenance of rodeo premises. The court further stated that the "occupier of premises used for athletic events or amusements must maintain the premises in a reasonably safe condition and furnish such equipment or services as is necessary to minimize or prevent injury to others from conditions which probably, or forseeably, may cause damage." 312 So.2d at 305. See also: Dorry v. Lafleur, supra; and Anno., 13 A.L.R. 4th 623.
*498 Applying the aforementioned law to the facts of this case we find that Hebert failed to exercise care commensurate with a foreseeable danger. In the absence of a railing there would be no doubt but that plaintiff would be deemed to have assumed the risk involved. However, inasmuch as there was a railing, plaintiff was entitled to assume it was reasonably safe, there being no warning to the contrary. The flexibility of the sliding pipe, installed by Hebert, its height and the design of the fence unreasonably threatened the safety of the spectators. In fact, Hebert knew that horses would occasionally jump or fall over the rail, yet the track lacked adequate warning of this danger. Clearly, had spectators been apprised of the risk of harm suffered by plaintiff, it is doubtful they would have so positioned themselves during the race. The record does not establish that either Hebert or Boudreaux used any method to assure the rail's safety or otherwise minimize or prevent injury to others. The record does establish that the sliding flexible water pipe failed in its intended purpose of restraining horses and no secondary fence existed to compensate for this defect. Hebert breached his duty to provide sufficient barriers, guards or other protective devices to reasonably insure spectators protection from injury by horses about the place.
Compare: Gulf Stream Park Racing Assoc. v. Miller, 119 So.2d 749 (Fla.App.1960); Windeler v. Rush County Fair Assoc., 27 Ind.App. 92, 97, 60 N.E. 954 (1901); Martino v. Park Jefferson Racing Assoc., 315 N.W.2d 309 (S.D.1982).
Having found liability on the basis of negligence, we need not address whether the scope of Article 2322 and accompanying jurisprudence should be extended to a vice in the construction of a racetrack railing.
Persons whose concurring fault has caused injury to another are answerable in solido. La.C.C. Art. 2324. A proprietor is responsible not only for his own activity which causes damage but also for that carried on by his agents, contractors and representatives with his consent and permission, and liability attaches also to the agent or contractor who becomes solidarily liable. Chaney v. Travelers Ins. Co., 259 La. 1, 249 So.2d 181 (La.1971). Accordingly, the judgment appealed is amended to cast Hebert liable in solido with Boudreaux and Vice.
The last remaining issue is whether the plaintiff is entitled to an increase in his award, set by the trial judge at $100,000 plus medical and incidental expenses. In quantum issues, as in other issues, there must necessarily be a degree of uncertainty in predicting the ultimate result in a given case. Accordingly trial judges are vested with much discretion. Our review of the record indicates no manifest abuse of the trial court's great discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
For the reasons assigned hereinabove, the judgment appealed is reversed in part and amended to cast Clement Hebert liable in solido with Onil Boudreaux and Virgil Vice for plaintiff's damages. In all other respects, the judgment appealed is affirmed. Costs of this appeal are to be divided between Richoux, Hebert, Boudreaux, and Vice.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.