464 So.2d 1250 (1985)
David Carl ASHCROFT, Appellant/Cross-Appellee,
v.
CALDER RACE COURSE, INC., a Florida Corporation, Appellee/Cross-Appellant.
No. 82-2629.
District Court of Appeal of Florida, Third District.
February 19, 1985.
Rehearing Denied March 27, 1985.
*1251 Horton, Perse & Ginsberg and Arnold Ginsberg, Miami, Colodny & Fass, North Miami, Highsmith & Strauss, Miami, for appellant/cross-appellee.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James C. Blecke, Miami, for appellee/cross-appellant.
Before BASKIN, DANIEL S. PEARSON and JORGENSON, JJ.
JORGENSON, Judge.
This appeal requires us to determine whether the defense of express assumption of risk is available within the context of professional horse racing activity within the scope of Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). We conclude that such a defense is available and, for the reasons which follow, reverse the order of the trial judge declining to enter judgment for the defendant.[1]
David Ashcroft, a jockey, suffered catastrophic injuries when his horse, Kentucky Edd, veered across the race course through the seven-furlong exit gap. Ashcroft lost control of the horse and fell to the ground where he was run over by another horse, rendering him a quadriplegic. Ashcroft brought suit against Calder Race Course, Inc. (Calder) for damages alleging that the accident resulted from the negligent placement of the exit gap which he alleged resulted in Kentucky Edd's behavior. The case was tried to a jury which rendered an interrogatory verdict finding Calder negligent, Ashcroft not negligent; finding that Ashcroft had assumed the risk of the danger complained of, and assessing damages. The special interrogatory verdict included the following question regarding assumption of risk:
Question # 4 Did David Ashcroft know of the existence of the danger complained of, realize and appreciate the possibility of injury as a result of such danger; and, having a reasonable opportunity to avoid it, voluntarily and deliberately exposed himself to the danger complained of? X Yes ____ No
The form of the interrogatory verdict was expressly approved by the court in Kuehner v. Green, 436 So.2d 78 (Fla. 1983). In addition to the interrogatory verdict, the trial court charged the jury on express assumption of risk pursuant to Florida Standard Jury Instruction 3.8.[2] There is abundant evidence in this record supporting the jury's conclusion that Ashcroft expressly assumed the risk.
Ashcroft argues that the court's language in Blackburn limits the defense of express assumption of risk to contractual agreements or contact sports. That view, in our judgment, is too narrow. The Blackburn court clearly contemplated other professional sporting activity when it used the term "such as" when defining those cases in which actual consent exists and the express-assumption-of-risk defense is available. Blackburn, 348 So.2d at 290. The record reflects that, prior to the race which led to Ashcroft's tragic injuries, several meetings occurred between the jockeys racing at Calder and the Calder management. Ashcroft attended one of these meetings following an incident of a substantially similar nature. In fact, Ashcroft was riding Kentucky Edd on the date of that incident. Ashcroft personally asked about the location of the exit gap and inquired whether it was to be changed. He received advices that the gap would be moved at the end of the 1981 racing season. Additionally, there was evidence that *1252 Ashcroft knew of the tendency of horses to bolt through exit gaps. Cf. Baker v. Stolley, 155 So.2d 809 (Fla. 1st DCA 1963) (skilled horseman is charged with knowledge of propensities of a spirited horse). Ashcroft, an experienced jockey, admitted his familiarity with the particular horse, the track, and the location of the exit gap.
That horse racing is a dangerous activity hardly requires citation. Track operators, owners, and jockeys all take certain calculated risks when engaging in the sport of kings. See, e.g., Gulf Stream Park Racing Ass'n v. Miller, 119 So.2d 749 (Fla. 2d DCA), cert. denied, 125 So.2d 872 (Fla. 1960). See generally Annot., 87 A.L.R.2d 1179 (1963); Annot., 13 A.L.R.4th 623 (1982), and cases cited therein. The location of the exit gap was open and obvious, well known to Ashcroft. It could hardly be characterized as a latent defect. Ashcroft's reliance on Cole v. New York Racing Ass'n, 24 A.D.2d 933, 266 N.Y.S.2d 267 (App.Div. 1965), aff'd, 17 N.Y.2d 761, 270 N.Y.S.2d 421, 217 N.E.2d 144 (1966), is misplaced. The Cole court held that a construction deviation from general custom observed in the building of race track courses for economic reasons established the race track's negligence. No such evidence was adduced in the case below.
Calder has met the standard established in Kuehner and properly laid before the jury the question of assumption of risk. The jury having answered that question in the affirmative, Calder is absolved from liability. The trial court, therefore, erred when it failed to enter judgment for Calder. We accordingly reverse and remand with directions that it do so.
Reversed and remanded with directions.
BASKIN, Judge (dissenting).
I disagree with the majority's analysis of the doctrine of assumption of risk, and respectfully dissent.
This appeal and cross-appeal arise from an order granting a remittitur of $5,000,000, or, in the alternative, a new trial on all issues in appellant David Ashcroft's action to recover damages for personal injuries sustained during a horse race at Calder Race Course (Calder). Ashcroft rejected the trial court's reduction of the jury verdict in his favor, triggering the grant of a new trial. On appeal, Ashcroft seeks reinstatement of the $10,000,000 jury verdict, and Calder seeks the entry of a judgment in its favor. I would hold that the giving of an erroneous jury instruction mandates a new trial and would affirm the trial court's decision for reasons other than those advanced by the trial judge. My decision would make it unnecessary to consider the arguments concerning the propriety of the remittitur and the requested judgment in favor of Calder.
David Ashcroft was a jockey. He met tragedy while riding a horse named Kentucky Edd in a seven-furlong race at Calder. Kentucky Edd left the starting gate from the seven-furlong chute and was proceeding toward the inside rail. As the horse passed the end of the extension rail, he swerved or "ducked in" to the left, leaving the racing course and heading back to the barn. Ashcroft lost control of the horse, fell to the ground, and was trampled by another horse. His spine broken, David Ashcroft became a quadriplegic.
Ashcroft sued Calder, alleging that the incident resulted from its negligent placement of the exit gap. The exit gap is an opening in the rail surrounding the race course. Horses are conditioned to use the gap to return to the barn and stable areas following training sessions. Aware that the exit gap signals the route home, horses tend to react to its presence by heading back toward the barn rather than proceeding along the race course. Ashcroft contended that Calder was negligent in placing the exit gap behind the six-furlong pole instead of at the end of the seven-furlong chute. He asserted that the negligent placement caused Kentucky Edd to make a sudden and erratic turn away from the racing path, resulting in Ashcroft's fall and devastating personal injuries.
This cause is fraught with substantive and procedural questions in connection *1253 with the affirmative defense of assumption of risk. At trial Calder asserted that Ashcroft had assumed the risk; Ashcroft contested the validity and application of the defense of assumption of risk under Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). Calder moved for a directed verdict, arguing that Ashcroft's express assumption of the risk of racing from the seven-furlong chute constituted a complete defense which precluded the jury from finding Calder liable.
The trial court denied Calder's motion and ruled that assumption of risk was a question for jury determination. The proposed instruction on the defense of assumption of risk was the subject of much dispute at the trial court's charge conference. Calder requested that the jury receive both an instruction and a special verdict interrogatory on assumption of risk. Ashcroft objected to both requests. He argued that implied assumption of risk was no longer a separate defense in Florida, and that express assumption of risk did not apply because he had not participated in a contact sport. Overruling Ashcroft's objections, the trial court gave the challenged instruction on express assumption of risk pursuant to Florida Standard Jury Instruction 3.8,[1] followed by an instruction that "If the greater weight of the evidence shows that David Ashcroft assumed the risk, then your verdict should be for the defendant, Calder Racecourse, Incorporated."
Lengthy argument ensued over the form of the special verdict interrogatory. Despite Ashcroft's objection, the court approved a verdict form asking the jury to decide whether Ashcroft had assumed the risk. The court then considered the sequence in which the questions pertaining to liability and to assumption of risk would appear on the verdict. The parties ultimately reached a compromise: the first questions related to the negligence of the parties; the next question asked whether Ashcroft assumed the risk; the final question called for a determination of the amount of damages to be awarded.
The jury found[2] that Calder was negligent, that Ashcroft was not negligent, that *1254 Ashcroft had assumed the risk of the danger complained of and that Ashcroft sustained damages totaling $10,000,000. The trial court rejected Calder's contention that by finding Ashcroft had assumed the risk, the jury had found that Calder bore no liability. The court entered a final judgment in favor of Ashcroft in accordance with the $10,000,000 jury verdict but, upon motion by Calder, deemed the verdict excessive and granted Calder's motion for remittitur or, in the alternative, a new trial.[3] The court reduced the award from $10,000,000 to $5,000,000, but, when Ashcroft declined the remittitur, the cause was subject to the alternative new trial granted by the trial court, not merely as to liability, but on all issues.[4] Both parties appealed. Although the parties raise a number of points seeking various forms of appellate relief,[5] I would narrow the focus of inquiry to the propriety of the jury instruction on express assumption of risk under the facts of this case.[6] I would hold that under Florida law, a charge on express assumption of risk is inappropriate in this case.
In Blackburn, the Supreme Court of Florida abolished implied assumption of risk as a separate defense and incorporated it into the doctrine of comparative negligence. Implied assumption of risk now merges with the defense of contributory negligence in the determination of relative fault. According to Blackburn, however, express assumption of risk remains a viable defense barring liability for negligence under circumstances defined by the Blackburn court. Included within the supreme court's definition of express assumption of risk are:
[E]xpress contracts not to sue for injury or loss which may thereafter be occasioned by the covenantee's negligence as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport.
Blackburn at 290.
Calder's defense that Ashcroft assumed the risk does not fall into either of the definitions of express assumption of risk established in Blackburn: first, the record contains no evidence of an express contract between Ashcroft and Calder waiving Ashcroft's right to sue for injuries; second, although horse racing is an inherently dangerous sport, it is not a contact sport for purposes of the defense of express assumption of risk. Cf. Kuehner v. Green, 436 So.2d 78 (Fla. 1983) (jury properly found that plaintiff expressly assumed risk of injury from "leg sweeps" by engaging in contact sport of karate); Strickland v. Roberts, 382 So.2d 1338 (Fla. 5th DCA), review denied, 389 So.2d 1115 (Fla. 1980) (absent aberrant conduct by participant, *1255 water skiing is normally not considered a contact sport). Although certain risks inherent in the sport of horse racing are assumed by all participants, see, e.g. Santiago v. Clark, 444 F. Supp. 1077 (N.E.West Va. 1978) (in a horse race, jockeys assume risk of collisions with other jockeys), the dangerous condition created by Calder's placement of the exit gap was neither an ordinary and necessary danger nor a danger inherent in the sport of horse racing, see Cole v. New York Racing Association, 24 A.D.2d 933, 266 N.Y.S.2d 267 (1965) (in action for wrongful death of jockey who struck elevated concrete footings negligently maintained by defendant, defense of assumption of risk did not lie where danger complained of was not inherent in the activity). Furthermore, Ashcroft's participation in the race did not involve any aberrant or intentional conduct on his part for which he might be held to have assumed the risk. See Carvajal v. Alvarez, 462 So.2d 1156 (Fla. 3d DCA 1984) (assumption of risk instruction was proper where jury could have concluded that rider's conduct constituted aberrant form of horseback riding); Strickland (plaintiff injured while engaging in aberrant form of water skiing expressly assumed risk of his game). In summary, Ashcroft's alleged assumption of risk did not arise from express contract, from participation in a contact sport, from a danger inherent in horse racing, or from aberrant conduct by Ashcroft. I would therefore conclude that the trial court misconstrued the law when it charged the jury on the affirmative defense of express assumption of risk under the facts of this case.
Instructing a jury with a misleading and erroneous instruction usually leads to reversal, see Yacker v. Teitch, 330 So.2d 828 (Fla. 3d DCA 1976); however, the unusual procedural posture of this case calls for a different result. The trial court has already granted a new trial and, accordingly, I would affirm that order upon a finding that the jury verdict was predicated upon and tainted by the erroneous instruction. A new trial is therefore warranted. See Huestis v. Blue Ribbon Laundry, Inc., 364 So.2d 88 (Fla. 3d DCA 1978). A trial court's order based upon an erroneous ground will be affirmed if appellate review discloses an alternative theory supporting its entry. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979); Petrulli v. Approved Dry Wall Construction, Inc., 284 So.2d 27 (Fla. 3d DCA 1973), cert. denied, 292 So.2d 18 (Fla. 1974). As did the court in Lake Region Paradise Island, Inc. v. Graviss, 335 So.2d 341, 343 (Fla. 2d DCA), cert. dismissed, 338 So.2d 842 (Fla. 1976), I would hold that:
[u]nder the peculiar circumstances of this case, . .. we are justified in broadening our scope of review to the extent necessary to affirm the order granting the new trial on [all issues] because of the legal necessity of having such a new trial, even though the trial judge's reasoning was different than ours.
For these reasons, I would affirm the order granting a new trial.
NOTES
[1] Our determination of this issue moots the other issues raised by the parties in the appeal and cross-appeal.
[2] Florida Standard Jury Instruction 3.8 provides:

On the [second] defense, the issues for your determination are whether (claimant) knew of the existence of the danger complained of; realized and appreciated the possibility of injury as a result of such danger; and, having a reasonable opportunity to avoid it, voluntarily and deliberately exposed himself to the danger complained of.
[1] Florida Standard Jury Instruction 3.8 provides:

On the [second] defense, the issues for your determination are whether (claimant) knew of the existence of the danger complained of; realized and appreciated the possibility of injury as a result of such danger; and, having a reasonable opportunity to avoid it, voluntarily and deliberately exposed himself to the danger complained of.
.....
NOTE ON USE
.....
*2. Assumption of risk. Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977) abolishes the defense of assumption of risk except in cases identified by the opinion.
Thus, the challenged instruction set forth the elements of express rather than implied assumption of risk.
[2] The following special verdict interrogatory was returned by the jury in this cause:

We, the jury, return the following verdict:
1. Was there negligence on the part of defendant, Calder Race Course, Inc., which was a legal cause of damage to plaintiff, David Ashcroft?
 Yes X No ____
If your answer to question No. 1 is NO, your verdict is for the defendant and you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to question 1 is YES, please answer question 2.
2. Was there negligence on the part of plaintiff, David Ashcroft, which was a legal cause of his damage?
 Yes ____ No X 
If your answer to question 2 is YES, please answer question 3. If your answer to question 2 is NO, skip question 3 and answer question 4.
.....
4. Did David Ashcroft know of the existence of the danger complained of, realize and appreciate the possibility of injury as a result of such danger; and, having a reasonable opportunity to avoid it, voluntarily and deliberately expose himself to the danger complained of?
 Yes X No ____
5. What is the total amount (100%) of any damages sustained by plaintiff, David Ashcroft, and caused by the incident in question?
 $ 10 MILLION 
In determining the total amount of damages, do not make any reduction because of the negligence, if any, of plaintiff, David Ashcroft. If you have found David Ashcroft negligent in any degree, the court in entering judgment will reduce David Ashcroft's total amount of damages (100%) by the percentage of negligence which you found is chargeable to David Ashcroft.
These answers appear to be inconsistent, but the sequence of the interrogatories has been approved in Kuehner v. Green, 436 So.2d 78 (Fla. 1983).
[3] Calder also filed a motion for judgment on the verdict in its favor which was denied by the trial court. The denial is the subject of Calder's appeal.
[4] Generally, when the trial court declares a damage award excessive, the proper remedy is a remittitur or a new trial solely on damages. Gould v. National Bank of Florida, 421 So.2d 798 (Fla. 3d DCA 1982); Parks v. Ralston Construction Co., 338 So.2d 65 (Fla. 3d DCA 1976); Aronson v. Siquier, 318 So.2d 452 (Fla. 3d DCA 1975). However, because I would affirm the order granting a new trial based on an erroneous jury instruction, rather than as the alternative to a remittitur, I would approve a new trial on all issues. See Huestis v. Blue Ribbon Laundry, Inc., 364 So.2d 88 (Fla. 3d DCA 1978).
[5] Calder challenges the propriety of the trial court's failure to give a jury instruction limiting the scope of evidence of remedial measures taken by Calder subsequent to the incident, § 90.407, Fla. Stat. (1979). Although I agree that the trial court erred, see Allett v. Hill, 422 So.2d 1047 (Fla. 4th DCA 1982), the error is not prejudicial. See White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984); Allett.
[6] The record reflects that counsel properly preserved challenges to the jury charge relating to assumption of risk. Ashcroft's objection to the instruction and to the special verdict interrogatory have already been noted in the text of this opinion. Furthermore, Ashcroft's appellate briefs present strenuous arguments against the application of the doctrine of express assumption of risk as a defense to the facts of this case.