BYRNES, Judge.
This case arises out of a slip and fall accident at the Community Correctional Center in Orleans Parish in which the plaintiff/appellant, Michael Fournier (Fournier), was injured. Plaintiff filed suit for his injuries against the City of New Orleans *1045 (City) as the owner of the Correctional Center and Charles Foti, Orleans Parish Criminal Sheriff (Sheriff) as the party responsible for the maintenance of the prison. Plaintiff alleged strict liability under Civil Code Article 2317 and negligence under Article 2315. Following a bench trial, the lower court rendered judgment in favor of the defendants, dismissing the plaintiffs suit at his costs.
Fournier perfected this appeal making four assignments of error, as follows:
1) The trial court erred in not finding the negligence of the Sheriff to be the cause in fact of his injuries;
2) The trial court erred in not finding the City strictly liable;
3) The trial court erred in finding the plaintiff to be solely negligent in causing his own injuries; and
4) The trial court erred in finding the accident was caused by an “Act of God”.
We find these assignments to be without merit and affirm the judgment of the trial court.
FACTS
The trial court drafted rather extensive reasons for judgment containing a complete recitation of the facts, as follows:
“On June 23, 1983 at approximately 2:00 p.m., Fournier, a 29-year-old convicted felon inmate, sustained a traumatic amputation of the little finger, a partial amputation of the fourth finger (ring finger) and a back injury when an exterior steel door closed upon his hand.
* * # # $
“The prison was constructed in 1977. The sixth (top) floor is composed of cement and concrete blocks. Two service elevators empty into a large irregularly-shaped room which is approximately 40 to 50 feet long and 25 feet wide. This room divides two roof sections, which permit roof access through two separate doorways. One exterior doorway leads to a roof exercise area and basketball court, which is frequently utilized by inmates. The other exterior doorway, which was involved in the accident, leads to a roof which houses air conditioning equipment and is infrequently used by inmates.
Both doors are identical security exterior doors. Each weighs 250 to 300 pounds and rests on ball-bearing hinges. Each has a steel handgrip six inches inside and outside, 3 feet 9½ inches above the bottom edge of the door, four inches from the striking edge of the door. A security key, called a dead lock, locks the door. No anti-closing or automatic closing devices were ever designed or installed on either door.
Only plaintiff testified as to how the accident occurred. Fournier, along with other prisoners, were taken to the basketball side of the roof for exercise, when it began to rain. They were ordered into the sixth floor vestibule to continue their exercise. Rain began to blow into the module through the open door. A guard ordered Fournier to close the door, which was the door opposite to the basketball courtyard. The door, at this time, was fully opened to 180 degrees with the exterior handle resting against the cement building wall. Rather than walk outside in the rain and grab the door handle while standing on the roof floor, Fournier chose to close the door while standing on the door edge. The door edge is three inches wide and rises six inches from the inside module floor and 18 inches from the outside roof floor.
He put his left hand on the left wall door frame, leaned outward as far as possible, grasped the inside door handle with his right hand and began to close the door, inward, with great difficulty, and continuously until it was six to twelve inches from closure. While in this awkward, off-balanced position, he claims that a gust of high wind unexpectedly pushed the door inward, causing his feet to fall backward off the door ledge, fall on his stomach and face, his right hand extended between the closing door and door frame. His injury occurred when the door slammed shut while he was in this position.” (Reasons for judgment, December 8, 1987, pp. 1-2)
*1046 We note at the outset that the only testimony presented at trial regarding the facts of the accident was provided by the plaintiff. Further, the record reflects that the court not only had the benefit of the plaintiffs words but also went to the scene of the accident where appellant re-enacted the events of June 23, 1983.
NEGLIGENCE
Assignments one and three of appellant’s brief involve the negligence aspects of his claim against the Sheriff; therefore we will discuss these assignments together.
In Leman v. Allstate Insurance Company, 522 So.2d 696, 698 (La.App. 5th Cir. 1988), the court stated:
In deciding the issue of whether the risk resulting in a person’s harm was within a duty imposed on an alleged tortfeasor, Louisiana has adopted an approach which first requires us to answer two principal questions: (1) was the conduct complained of a cause-in-fact of the harm; and (2) was the alleged tortfeasor under a duty to protect against the particular risk involved? Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
This approach is commonly known as the duty-risk analysis. In terms of duty-risk,' appellant contends that it was the Sheriffs negligent conduct that was a cause-in-fact of his injuries and that the Sheriff owed him a duty to protect him from the risk of the security door being blown shut suddenly during a sudden thunderstorm.
It is appellant’s contention that the Sheriff was negligent in his care and control of the security door. More specifically, he indicates that the Sheriff was negligent for, among other things, not adequately training the guards and other prison employees in the correct operation of the security door. Further, he states that the door should have had an automatic door closer device.
Appellant alleged that as the door pushed closed he was forced to step off the doorsill into a puddle of water that had accumulated from the rain blowing in, causing him to slip. After examining the premises and witnessing plaintiff’s re-enactment of the accident, the court found that appellant in fact had remained on the door sill and that the accident was caused solely by Fournier’s own actions in that “he negligently overextended his body into an unsafe awkward position when he attempted to close the heavy security door.” The Court further found that, in any case, the presence of rainwater near a door that was open to the outside during a thunderstorm was reasonably forseeable. Additionally, the Court found that the defendants owed no duty to protect the plaintiff from the particular risk involved and therefore could not have breached a duty specifically. The court held:
“Both at the time of construction of the subject prison and currently there are no federal, state, city, or national safety codes, standards or requirements which mandate anti-closing devices on exterior prison security doors. Exterior doors weighing 250 to 300 pounds, which are infrequently used, are not likely to be violently opened or shut by average winds in this area. The need for such a device on a door located on a 1 prison rooftop, where all activity is strictly controlled, is even less likely than in other areas. Therefore the absence of the anti-slam device does not render the door unreasonably dangerous, since it was not foreseeable that anyone would utilize this exterior door regularly, that it would cause injury during its normal use or that an inmate would improperly close the door during a rainstorm.” (Reasons for judgment, December 8, 1987, pp. 2-4)
Thus, the evidence presented at trial clearly supports a finding that the action or inaction of the Sheriff was not the proximate cause of appellant’s injuries; in fact, it was appellant’s own negligence that caused the accident. Further, there is no evidence to support the claim that there was any duty on the part of the Sheriff to protect appellant from the particular risk involved herein.
STRICT LIABILITY
Appellant’s second and fourth assignments of error relate to the strict liability *1047 claims he asserts against the City as the owner of the correctional facility. Accordingly, we shall address these two assignments together.
Strict liability in Louisiana is based upon Civil Code Articles 2317 and 2322, which read as follows:

“2317.

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the thing which we have in our custody.” 2322
“The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
It is well settled that the principal consideration in a strict liability ease is whether the person or thing that caused the injury presents an unreasonable risk of harm to others. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Richoux v. Hebert, 449 So.2d 491 (La.App. 3rd Cir.1983) writ denied 450 So.2d 368 (La.1984), Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3rd Cir.1981).
In Everett v. Louisiana Department of Transportation and Development, 424 So. 2d 336, 339 (La.App. 1st Gir.1982), the court set out the three-fold burden that a plaintiff must meet to recover on a claim of strict liability, as follows:
One may recover on the basis of strict liability under L.S.A.-C.C. 2317 by showing (1) that the thing which caused the damage was in the care or custody of the defendant, (2) that it had a vice or defect, that is, some condition which occasioned an unreasonable risk of injury, and (3) that the injury was caused by the defect. Jones v. City of Baton Rouge, etc., 388 So.2d 737, 739 (La.1980).
In the case at bar, as previously noted, appellant failed to prove that the lack of a “automatic closing” or “anti-slam” device on the prison door was a vice or defect in the design or use of the door. No such device is required or recommended by applicable codes and standards. Therefore the absence of such a device is not a defect and does not create an unreasonable risk of injury. Thus, although the security door was in the care and custody of defendant, appellant failed to prove any vice or defect therein.
Finally, the court found and we agree that even if appellant had proved the existence of a vice or defect, the evidence supports a finding that an act of God (i.e. sudden thunderstorm) caused the door to close resulting in injury to the appellant. As the trial judge stated:
Even assuming there was a defect in the property owned and maintained by the defendants in this case which contributed to plaintiffs accident and injury, the defendants would have no liability under La.C.C. Arts. 2317 and 2322 because strict liability is excused when the facts indicate that an Act of God caused the accident. Kirsch v. Kappa Alpha Order, 373 So.2d 775, 776 (La.App. 3rd Cir. 1979), Loescher v. Parr, 324 So.2d 441, 449 (La.1975). The Court finds that the burst of wind which caused the accident under the plaintiffs version of the story is the type of “unforeseeable violent manifestation of nature” which excuses the defendant from strict liability under the case law. Kirsch, 373 So.2d at 449. Therefore, the defendants cannot be held liable. (Trial court reasons for judgment pp. 5).
CONCLUSION
The facts of this case were provided by appellant’s own testimony. Further, the trial court questioned the witnesses extensively and had an eyewitness view of the accident as re-enacted at the scene by the appellant. We find that under these circumstances the findings of the trial court have a reasonable factual basis and are therefore not clearly wrong. Accordingly, we cannot disturb these findings on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Further, the trial court is in the most favorable position to assess the credibility of the expert witnesses and absent manifest error, these findings will not be *1048 disturbed on appeal. Boehm v. Bienemy, 508 So.2d 159 (La.App. 4th Cir.1987).
Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by appellant.
AFFIRMED.