348 So.2d 287 (1977)
Kevin BLACKBURN, Jr., a Minor, by and through His Father and Next Friend, Kevin Blackburn, Sr., and Kevin Blackburn, Sr., Individually, Petitioners,
v.
David DORTA, a Minor, by and through His Parent and Natural Guardian, et al., Respondents.
LEADERSHIP HOUSING, INC., Petitioner,
v.
Concetta REA and Frank Rea, Her Husband, Respondents.
MAULE INDUSTRIES, INC., a Florida Corporation, Petitioner,
v.
Raymond C. PARKER, Sr., and Patricia A. Parker, His Wife, Respondents.
Nos. 46621, 47621 and 48443.
Supreme Court of Florida.
May 5, 1977.
Rehearings Denied July 27, 1977.
*288 Ira H. Leesfield, Miami, James D. Little and Larry S. Stewart, Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for petitioners in 46621.
William E. Sadowski, Helliwell, Melrose & DeWolf, Miami, for respondents in 46621.
Frank E. Maloney, Jr., Fleming, O'Bryan & Fleming, Fort Lauderdale, for petitioner in 47621.
James W. Dawson, Fazio, Dawson & Thompson, Fort Lauderdale, for respondents in 47621.
Thomas E. Scott, Jr., Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, Miami, for the Dade County Defense Bar Association, amicus curiae.
Alfred A. Green, Jr., Green, Strasser & Hammond, Daytona Beach, for petitioner in 48443.
Anthony I. Provitola and Michael McDermott, Provitola & McDermott, Deland, for respondents in 48443.
SUNDBERG, Justice.
These three consolidated cases are before the Court under our conflict certiorari jurisdiction as provided by Article V, Section 3(b)(3), Florida Constitution, and Florida Appellate Rule 4.5(b). The District Court of Appeal, Third District, in Dorta v. Blackburn, 302 So.2d 450 (Fla. 3d DCA 1974), found that the doctrine of assumption of risk is still viable as an absolute bar to recovery subsequent to our adoption of the rule of comparative negligence in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). On the same point of law, the District Court of Appeal, First District, in Parker v. Maule Industries, Inc., 321 So.2d 106 (Fla. 1st DCA 1975); and the Fourth District in Rea v. Leadership Housing, Inc., 312 So.2d 818 (Fla. 4th DCA 1975), reached contrary conclusions. Subsequent to entertaining these consolidated cases, the District Court of Appeal, First District, has decided Smith v. Carter, 338 So.2d 845 (Fla. 1st DCA 1976); Hambrick v. Jackson, 333 So.2d 96 (Fla. 1st DCA 1976), and Manassa v. New Hampshire Insurance Co., 332 So.2d 34 (Fla. 1st DCA 1976). In addition, the District Court of Appeal, Second District, has decided Hall v. *289 Horton, 330 So.2d 81 (Fla. 2d DCA 1976). Each of these last cited decisions rejects the continued viability of assumption of risk as a complete bar to recovery. We have jurisdiction.
Since our decision in Hoffman v. Jones, supra, contributory negligence no longer serves as a complete bar to plaintiff's recovery but is to be considered in apportioning damages according to the principles of comparative negligence. We are now asked to determine the effect of the Hoffman decision on the common law doctrine of assumption of risk. If assumption of risk is equivalent to contributory negligence, then Hoffman mandates that it can no longer operate as a complete bar to recovery. However, if it has a distinct purpose apart from contributory negligence, its continued existence remains unaffected by Hoffman. This question was expressly reserved in Hoffman as being not ripe for decision. 280 So.2d 431, 439.
At the outset, we note that assumption of risk is not a favored defense. There is a puissant drift toward abrogating the defense.[1] The argument is that assumption of risk serves no purpose which is not subsumed by either the doctrine of contributory negligence or the common law concept of duty.[2] It is said that this redundancy results in confusion and, in some cases, denies recovery unjustly. The leading case in Florida dealing with the distinction between the doctrines recognizes that "[a]t times the line of demarcation between contributory negligence and assumption of risk is exceedingly difficult to define." Byers v. Gunn, 81 So.2d 723, 727 (Fla. 1955). The issue is most salient in states which have enacted comparative negligence legislation. Those statutes provide that the common law defense of contributory negligence no longer necessarily acts as a complete bar to recovery. The effect of these statutes upon the doctrine of assumption of risk has proved to be controversial. Joining the intensifying assault upon the doctrine, a number of comparative negligence jurisdictions have abrogated assumption of risk.[3] Those *290 jurisdictions hold that assumption of risk is interchangeable with contributory negligence and should be treated equivalently. Today we are invited to join this trend of dissatisfaction with the doctrine. For the reasons herein expressed, we accept the invitation.
At the commencement of any analysis of the doctrine of assumption of risk, we must recognize that we deal with a potpourri of labels, concepts, definitions, thoughts, and doctrines. The confusion of labels does not end with the indiscriminate and interchangeable use of the terms "contributory negligence" and "assumption of risk." In the case law and among text writers, there have developed categories of assumption of risk. Distinctions exist between express and implied;[4] between primary and secondary;[5] and between reasonable and unreasonable or, as sometimes expressed, strict and qualified.[6] It will be our task to analyze these various labels and to trace the historical basis of the doctrine to unravel what has been in the law an "enigma wrapped in a mystery."
It should be pointed out that we are not here concerned with express assumption of risk which is a contractual concept outside the purview of this inquiry and upon which we express no opinion herein. Meistrich v. Casino Arena Attractions, supra (see footnote 5). Included within the definition of express assumption of risk are express contracts not to sue for injury or loss which may thereafter be occasioned by the covenantee's negligence as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport.
The breed of assumption of risk with which we deal here is that which arises by implication or implied assumption of risk. Initially it may be divided into the categories of primary and secondary. The term primary assumption of risk is simply another means of stating that the defendant was not negligent, either because he owed no duty to the plaintiff in the first instance, or because he did not breach the duty owed. Secondary assumption of risk is an affirmative defense to an established breach of a duty owed by the defendant to the plaintiff. Meistrich v. Casino Arena Attractions, supra.
The concept of primary assumption of risk is the basis for the historical doctrine which arose in the master-servant relationship during the late nineteenth century. See Leavitt v. Gillaspie, supra (see footnote 3). The master was held not to be negligent if he provided a reasonably safe place to work; the servant was said to have assumed the inherent risks that remained. In this context assumption of risk was not an affirmative defense at all. Rather, it was another way of expressing that the master was not negligent, for the servant had the burden of proving that his injury resulted from a risk other than one inherent in a facility or location that was a reasonably safe place to work. Taylor v. Chicago, Rock Island & Pacific Ry., 186 Iowa 506, 170 N.W. 388 (1919). As is often the case in the common law, however, the doctrine mutated into an affirmative defense, with the burden of pleading and proof upon the master. Consequently, even if the servant could show that the master owed and had breached a duty to provide a reasonably safe place to work, the master could escape liability if he could establish that the servant had voluntarily exposed himself to a risk negligently created by the master. Thus, two distinct concepts came to bear the same label with inevitable confusion which has persisted to the present. Meistrich v. Casino Arena Attractions, supra.
*291 It is apparent that no useful purpose is served by retaining terminology which expresses the thought embodied in primary assumption of risk. This branch (or trunk) of the tree of assumption of risk is subsumed in the principle of negligence itself. Under our Florida jury instructions, the jury is directed first to determine whether the defendant has been negligent, i.e., did he owe a duty to the plaintiff and, if so, did he breach that duty? To sprinkle the term assumption of risk into the equation can only lead to confusion of a jury. See McGrath v. American Cyanamid Co., supra (see footnote 3). An example of this concept is presented in the operation of a passenger train. It can be said that a passenger assumes the risk of lurches and jerks which are ordinary and usual to the proper operation of the train, but that he does not assume the risk of extraordinary or unusual lurches and jerks resulting from substandard operation of the train. The same issue can be characterized in terms of the standard of care of the railroad. Thus, it can be said that the railroad owes a duty to operate its train with the degree of care of an ordinary prudent person under similar circumstances which includes some lurching and jerking while a train is in motion or commencing to move under ideal circumstances. So long as the lurching or jerking is not extraordinary due to substandard conduct of the railroad, there is no breach of duty and, hence, no negligence on the part of the railroad. The latter characterization of the issue clearly seems preferable and is consistent with the manner in which the jury is instructed under our standard jury instructions.
Having dispensed with express and primary-implied assumption of risk, we recur to secondary-implied assumption of risk which is the affirmative defense variety that has been such a thorn in the judicial side. The affirmative defense brand of assumption of risk can be subdivided into the type of conduct which is reasonable but nonetheless bars recovery (sometimes called pure or strict assumption of risk), and the type of conduct which is unreasonable and bars recovery (sometimes referred to as qualified assumption of risk). See Parker v. Redden, supra (see footnote 6). Application of pure or strict assumption of risk is exemplified by the hypothetical situation in which a landlord has negligently permitted his tenant's premises to become highly flammable and a fire ensues. The tenant returns from work to find the premises a blazing inferno with his infant child trapped within. He rushes in to retrieve the child and is injured in so doing. Under the pure doctrine of assumption of risk, the tenant is barred from recovery because it can be said he voluntarily exposed himself to a known risk. Under this view of assumption of risk, the tenant is precluded from recovery notwithstanding the fact that his conduct could be said to be entirely reasonable under the circumstances. Morrison & Conklin Construction Co. v. Cooper, 256 S.W.2d 505 (Ky. 1953); Restatement (Second) of Torts, § 496C, Comments d-g (1965). There is little to commend this doctrine of implied-pure or strict assumption of risk, and our research discloses no Florida case in which it has been applied. Certainly, in light of Hoffman v. Jones, supra, there is no reason supported by law or justice in this state to give credence to such a principle of law.
There remains, then, for analysis only the principle of implied-qualified assumption of risk, and it can be demonstrated in the hypothetical recited above with the minor alteration that the tenant rushes into the blazing premises to retrieve his favorite fedora. Such conduct on the tenant's part clearly would be unreasonable. Consequently, his conduct can just as readily be characterized as contributory negligence. It is the failure to exercise the care of a reasonably prudent man under similar circumstances. It is this last category of assumption of risk which has caused persistent confusion in the law of torts because of the lack of analytic difference between it and contributory negligence. If the only significant form of assumption of risk (implied-qualified) is so readily characterized, conceptualized, and verbalized as contributory negligence, can there be any sound *292 rationale for retaining it as a separate affirmative defense to negligent conduct which bars recovery altogether? In the absence of any historical imperative, the answer must be no. We are persuaded that there is no historical significance to the doctrine of implied-secondary assumption of risk. As pointed out earlier in this opinion, the affirmative defense developed from a misapplication of principles applicable to the standard of care imposed upon an employer in the master-servant relationship. The opinion of the United States Supreme Court in Tiller v. Atlantic Coast Line R.R., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943), demonstrates that the doctrine has not only been indiscriminately misapplied historically but also represents a morally unacceptable social policy which was calculated to advance the industrial revolution regardless of the cost in human suffering. Mr. Justice Frankfurter, concurring, put it aptly when he stated:
The phrase "assumption of risk" is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas. Thus, in the setting of one set of circumstances, "assumption of risk" has been used as a shorthand way of saying that although an employer may have violated the duty of care which he owed his employee, he could nevertheless escape liability for damages resulting from his negligence if the employee, by accepting or continuing in the employment with "notice" of such negligence, "assumed the risk." In such situations "assumption of risk" is a defense which enables a negligent employer to defeat recovery against him. In the setting of a totally different set of circumstances, "assumption of risk" has a totally different meaning. Industrial enterprise entails, for all those engaged in it, certain hazards to life and limb which no amount of care on the part of the employer can avoid. In denying recovery to an employee injured as a result of exposure to such a hazard, where the employer has in no sense been negligent or derelict in the duty owed to his employees, courts have often said that the employee "assumed the risk." Here the phrase "assumption of risk" is used simply to convey the idea that the employer was not at fault and therefore not liable.
Plainly enough only mischief could result from using a single phrase to express two such different ideas. Such ambiguity necessarily does harm to the desirability of clarity and coherence in any civilized system of law. But the greater mischief was that in one of its aspects the phrase "assumption of risk" gave judicial expression to a social policy that entailed much human misery. The notion of "assumption of risk" as a defense  that is, where the employer concededly failed in his duty of care and nevertheless escaped liability because the employee had "agreed" to "assume the risk" of the employer's fault  rested, in the context of our industrial society, upon a pure fiction. And in all English-speaking countries legislation was necessary to correct this injustice... . 318 U.S. 54 at 68-69, 63 S.Ct. 444 at 452.
See also Lyons v. Redding Construction Co., supra (see footnote 3).
We find no discernible basis analytically or historically to maintain a distinction between the affirmative defense of contributory negligence and assumption of risk. The latter appears to be a viable, rational doctrine only in the sense described herein as implied-qualified assumption of risk which connotes unreasonable conduct on the part of the plaintiff. This result comports with the definition of contributory negligence appearing in Restatement (Second) of Torts, § 466 (1965). Furthermore, were we not otherwise persuaded to elimination of assumption of risk as a separate affirmative defense in the context herein described, the decision of this Court in Hoffman v. Jones, supra, would dictate such a result. As stated therein:

*293 ... A primary function of a court is to see that legal conflicts are equitably resolved. In the field of tort law, the most equitable result that can ever be reached by a court is the equation of liability with fault. Comparative negligence does this more completely than contributory negligence, and we would be shirking our duty if we did not adopt the better doctrine. 280 So.2d 431, 438.
Is liability equated with fault under a doctrine which would totally bar recovery by one who voluntarily, but reasonably, assumes a known risk while one whose conduct is unreasonable but denominated "contributory negligence" is permitted to recover a proportionate amount of his damages for injury? Certainly not. Therefore, we hold that the affirmative defense of implied assumption of risk is merged into the defense of contributory negligence and the principles of comparative negligence enunciated in Hoffman v. Jones, supra, shall apply in all cases where such defense is asserted.
Accordingly, the petition for writ of certiorari to the District Court of Appeal, Third District, in Blackburn v. Dorta, Case No. 46,621, is granted, the decision of that court is quashed, and the cause is remanded for further proceedings not inconsistent herewith. In Leadership Housing, Inc. v. Rea, Case No. 47,621, and in Maule Industries, Inc. v. Parker, Case No. 48,443, the District Court decisions are approved, and writs of certiorari are discharged.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND and HATCHETT, JJ., concur.
NOTES
[1] See 2 Harper and James, Law of Torts, 1956, 1162-1192; Fleming, Law of Torts, 2d Ed. 1961, 249-258; Bohlen, "Voluntary Assumption of Risk," 1906, 20 Harv.L.Rev. 14, 91: Rice, "The Automobile Guest and the Rationale of Assumption of Risk," 1943, 27 Minn.L.Rev. 33; Payne, "Assumption of Risk and Negligence," 1957, 35 Can.Bar Rev. 950; Wade, "The Place of Assumption of Risk in the Law of Negligence," 1961, 22 La.L.Rev. 5; James, "Assumption of Risk: Unhappy Reincarnation," 1968, 78 Yale L.J. 185, 56 Minn.L.Rev. 47.
[2] See for example Petrone v. Margolis, 20 N.J. Super. 180, 89 A.2d 476 (1952), which says that the two doctrines are now treated as "convertible terms."
[3] Our research indicates that the following states have indicated either that assumption of risk should not be pleaded or that assumption of risk should be considered the equivalent of contributory negligence:

a. Alaska: Leavitt v. Gillaspie, 443 P.2d 61
 (Alas. 1968);
b. Connecticut: G.S.C.A. § 52-572h (1973);
c. New Hampshire: Bolduc v. Crain, 104 N.H. 163,
 181 A.2d 641 (1962);
d. New Jersey: McGrath v. American Cyanamid
 Co., 41 N.J. 272, 196 A.2d 238 (1963);
e. New Mexico: Williamson v. Smith, 83 N.M.
 336, 491 P.2d 1147 (1971);
f. North Dakota: Wentz v. Deseth, 221 N.W.
 2d 101 (N.D. 1974); N.D.Stat.
 9-10-06 (1973);
g. Utah: Utah Stat. 78-27-37 (1975);
h. Wisconsin: McConville v. State Farm
 Mutual Auto Ins. Co., 15 Wis.2d
 374, 113 N.W.2d 14 11962).

The following states have indicated that although express assumption of risk is a viable defense, implied assumption of risk is equivalent to and should be treated like contributory negligence:

a. Kansas: Smith v. Blakey, 213 Kan. 91,
 515 P.2d 1062 (1973);
b. Maine: Wilson v. Gordon, 354 A.2d 398
 (Me. 1976);
c. Minnesota: Springrose v. Willmore, 292
 Minn. 23, 192 N.W.2d 826
 (1971);
d. Oregon: Zumwalt v. Lindland, 239 Or.
 26, 396 P.2d 205 (1964); Or.
 Rev. Stat. § 18.470 (1971);
e. Texas: Farley v. M M Cattle Co., 529
 S.W.2d 751 (Tex. 1975);
f. Washington: Lyons v. Redding Constr. Co.,
 83 Wash.2d 86, 515 P.2d 821
 (1973);
g. Wyoming: Sanders v. Pitner, 508 P.2d 602
 (Wyo. 1973) (The court notes
 that the comparative negligence
 doctrine may necessitate
 a distinction between the doctrines
 at some later date.)

California, Li v. Yellow Cab Co., 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975), and Hawaii, Bulatao v. Kauai Motors, Ltd., 49 Haw. 1, 406 P.2d 887 (1965), have both indicated that assumption of risk may not be a defense when it overlaps with contributory negligence.
[4] See Schwartz, Comparative Negligence, § 9.2, pp. 158-159.
[5] See Meistrich v. Casino Arena Attractions, 31 N.J. 44, 155 A.2d 90, 82 A.L.R.2d 1208 (1959).
[6] See Parker v. Redden, 421 S.W.2d 586 (Ky. 1967).