491 So.2d 303 (1986)
Luann BLACK, Appellant,
v.
DISTRICT BOARD OF TRUSTEES OF BROWARD COMMUNITY COLLEGE FLORIDA, et al., Appellees.
No. 85-1278.
District Court of Appeal of Florida, Fourth District.
July 9, 1986.
*304 Jeffrey M. Fenster and Stacie L. Cohen, of Fenster and Faerber, P.A., Plantation, for appellant.
Anthony A. Balasso, of Walton, Lantaff, Schroeder & Carson, Fort Lauderdale, for appellee District Bd. of Trustees of Broward Community College Florida.
Alan L. Landsberg, Miami, and Jane Kreusler-Walsh and Larry Klein, of Klein & Beranek, P.A., West Palm Beach, for appellee City of Hollywood.
ANSTEAD, Judge.
This is an appeal from a jury verdict and final judgment in favor of the defendants in a negligence action, entered upon the finding that appellant, a police officer trainee, expressly assumed the risk of the injury she incurred during a police academy training exercise. We affirm.
Appellant Luann Black was the plaintiff in an action against appellees City of Hollywood (City) and the District Board of Trustees of Broward Community College (Board) for damages arising out of injuries sustained during a training exercise at the Broward County Police Academy.[1] Black was employed by the City of Fort Lauderdale as a police officer trainee. She was enrolled as a cadet in the Broward Community College Police Training Program, which was conducted pursuant to an inter-agency agreement for the benefit of the municipalities of the county. On September 7, 1982, Black was participating with other trainees in a realistic training exercise, called a "street survival session," in which the trainees were assigned various roles and their performance was evaluated. Black was to play the role of a "bad guy" in a problem involving the apprehension and search of a stolen vehicle. She was not among the "suspects" to be apprehended, so she stood along the sidelines. Also taking part in the exercise was Kathy Wilde, in training for the City of Hollywood Police Department. Wilde was to play a police officer, and was provided with a nonfunctional police service revolver. According to Black, there were "no guidelines" in the field problem.
As the exercise progressed, Wilde removed a gun from one of the student suspects, placed it in her belt, and began to search the interior of the "stolen" vehicle. Black, who had not yet interjected herself into the exercise, and considered herself to be "left out of the incident," stood watching these maneuvers from close by. At some point in the exercise, however, Captain Ed White, a police officer supervising the exercise, told Black to take Wilde's weapon if she got the opportunity. The testimony is unclear as to whether White said this at the beginning of the problem, or further along in the problem, after Wilde had seized the second weapon. About fifteen to twenty minutes into the exercise, Wilde moved close to Black, and Black believed she had an opportunity to get the weapon. As Black leaned forward to grab it, Wilde apparently sensed that Black was behind her, and turned around rapidly, accidentally striking Black in the mouth with her police revolver, causing injuries.
*305 The negligence action giving rise to this appeal was filed against the City in its capacity as Wilde's employer, and against the Board, who provided the facilities for the police training program. The defendants asserted assumption of risk as an affirmative defense. Black filed a motion to strike the defense, which the lower court denied. At trial, counsel for the plaintiff again moved to strike the assumption of risk defense as set forth in the special verdict form, and the trial court again denied. On May 3, 1985, the jury returned a verdict finding that Black had assumed the risk of her injury. The court entered final judgment in favor of both defendants, and denied Black's motion for a new trial.
The question is whether Black expressly assumed the risk of her injury by "sneaking up" on Cadet Wilde, knowing she had a weapon and would defend herself in this realistic exercise. The appellant contends that express assumption of risk cannot apply to police training as a matter of law, and alternatively that the defendants introduced no evidence to support the assumption of risk defense.
The leading Florida decisions on assumption of risk are Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977), and Kuehner v. Green, 436 So.2d 78 (Fla. 1983). In Blackburn, the supreme court abolished the doctrine of implied assumption of risk as a defense to an action in negligence, holding that the doctrine was merged into the defense of comparative negligence. 348 So.2d at 293. The court in Blackburn expressed no opinion as to whether assumption of risk would survive in its express form, described by the court as
express contracts not to sue for injury or loss ... as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport.
Id. at 290.
In Kuehner, the court addressed the question left open in Blackburn, as it applied to voluntary participation in contact sports. The plaintiff in Kuehner was injured by the defendant while the two were engaging in a karate sparring match. The court held that while a participant in a contact sport does not automatically assume the risks of non-deliberate injury, the doctrine of express assumption of risk would apply where the plaintiff voluntarily consents to take certain chances. 436 So.2d at 80. Express assumption of risk, according to Kuehner, is a question for the jury. Where the jury finds that the plaintiff subjectively appreciated the risk giving rise to the injury and proceeded to participate in the face of such danger, express assumption of risk will bar recovery. If the jury finds that the plaintiff did not appreciate the risk, but should reasonably have done so, then assumption of risk is inapplicable, and ordinary comparative negligence principles will apply. Id. In approving the district court's affirmance of the judgment in favor of the defendant, the court approved a special jury interrogatory on assumption of risk identical to the jury instruction given in this case. Id.
Subsequent case law has expanded the doctrine of express assumption of risk to a variety of situations, including riding a "mechanical bull," Van Tuyn v. Zurich American Insurance Co., 447 So.2d 318 (Fla. 4th DCA 1984); horseback riding with another rider on a single saddle, Carvajal v. Alvarez, 462 So.2d 1156 (Fla. 3d DCA 1984); knowingly diving into shallow water, Robbins v. Department of Natural Resources, 468 So.2d 1041 (Fla. 1st DCA 1985); and racing horses professionally, Ashcroft v. Calder Race Course, Inc., 464 So.2d 1250 (Fla. 3d DCA 1985). Although the courts in the above cases were not always satisfied that the defendants had met their burden of proof on the assumption of risk defense, in each case the court rejected the plaintiff's contention that express assumption of risk was inapplicable as a matter of law.
The assumption of risk cases do not provide a clear indication of what role, if any, the doctrine should play in the context of a police training exercise. However, we believe the underlying rationale of Kuehner *306 is applicable to the narrow circumstances of this case. The court wrote:

If contact sports are to continue to serve a legitimate recreational function in our society express assumption of risk must remain a viable defense to negligence actions spawned from these athletic endeavors... . When a participant volunteers to take certain chances he waives his right to be free from those bodily contacts inherent in the chances taken. Our judicial system must protect those who rely on such a waiver and engage in otherwise prohibited bodily contacts.

436 So.2d at 79-80 (emphasis supplied). In other words, careful application of the assumption of risk defense can be useful in maintaining the vitality of certain activities, like sports, in which a certain amount of physical contact is necessary, and encouraged. Spirited participation in police training, no less than participation in sports, is an activity which is beneficial to society as a whole. It is also an activity which can involve the use of physical force, a risk that is undertaken voluntarily by most trainees at some point in their education. To impose a mutual duty upon participants in such an activity, on threat of damages, to refrain from all conduct which would not be countenanced generally, is to discourage participation. Cf. Kuehner.
The most troubling aspect of the application of assumption of risk in this case is the contention by Black that she was acting under an "order" from her supervisor when she attempted to seize Wilde's gun. "Voluntary exposure is the bedrock upon which the doctrine of assumed risk rests." Kuehner, 436 So.2d at 80. Clearly, if Black's action was taken under compulsion, she cannot be said to have assumed the risk. We believe there was sufficient evidence, including Black's own testimony, for the jury to conclude that Captain White's instruction to "take the gun if you get the opportunity" came at the beginning of the problem and left her free to participate according to her own instincts. In other words, the jury was entitled to conclude as the finder of fact that Black was given the discretion to seize the officer's weapon, not mandated to do so, whatever the risk. We have no authority to interfere with that factual resolution by the jury. We also note that Captain White's employment status was a disputed issue at trial. It was never conclusively established that White had any special control over Black, as her superior officer would have in a work setting. This was also unlike a work setting for Black in that the police academy was operated not by the City of Fort Lauderdale, but through the joint cooperative efforts of the county, the college, and a number of municipalities.
We caution that our holding is predicated on the specific facts of this case. In particular, we do not suggest that the doctrine of assumption of risk applies to the appellant by virtue of her status as a policewoman. We agree with the appellant that the notion that a person who takes on an inherently dangerous profession must assume the risk of injuries from that profession is a classic example of implied assumption of risk, abolished by Blackburn. We simply hold that the jury could have found that Black voluntarily assumed a specific, known risk, i.e., being accidently struck by another officer while attempting to disarm that officer in a realistic training exercise.
In accord with the above we find no error by the trial court in submitting the issue of assumption of risk to the jury and the court's determination that there was sufficient evidence to sustain the jury's finding on that issue. Accordingly, we affirm the judgment of the trial court.
HERSEY, C.J., and DELL, J., concur.
NOTES
[1] The appeal as to the Board of Trustees has been voluntarily dismissed by stipulation of the parties.