662 So.2d 1272 (1995)
CITY OF MIAMI, Appellant,
v.
Ricardo CISNEROS, et al., Appellees.
No. 94-2545.
District Court of Appeal of Florida, Third District.
September 13, 1995.
Rehearing Denied December 6, 1995.
*1273 A. Quinn Jones III and Theresa L. Girten, for appellant.
Thomas W. Headley, for appellees.
Before BARKDULL, NESBITT and LEVY, JJ.
NESBITT, Judge.
In this negligence action, the city of Miami appeals a final judgment entered in favor of a child and his parents. We affirm.
During the 1989 football season, Ricky Cisneros, age eleven and weighing between seventy and seventy-five pounds, was a member of the city-sponsored Golden Knights football team. Ricky, one of the smaller players, played in only several games during the season, and was assigned a cornerback position. With the score twenty to zero in the Golden Knights' favor, the coach put Ricky in at an exhibition game. Ricky broke his leg when he attempted to tackle an opposing Tiger player weighing approximately 128 pounds. According to Ricky's father, the coach had promised him that Ricky would not play against players weighing over ninety pounds. The coach denied making that promise. According to the coach, the Cisneroses had signed a player consent form. The whereabouts of that form was unknown, however, and was not part of this record.[1]
*1274 After providing notice of Ricky's claim under section 768.28 Florida Statutes (1993), Mrs. Cisneros, in her capacity as Ricky's mother and next friend, filed this negligence action against the city. On the morning of trial the Cisneroses moved to amend their son's complaint to add themselves as parties, solely for the purpose of claiming Ricky's medical expenses. Over the city's objection the motion was granted. The trial judge found there would be no surprise or prejudice to the city in permitting the amendment. The trial judge also granted the city's motion to amend to allow a counterclaim against the parents.
At trial, the city's main defense was the doctrine of express assumption of risk. The city also argued that the coach's actions were not the proximate cause of Ricky's injury. The city's motion for directed verdict was denied and a jury returned a verdict in Ricky's and the Cisneroses' favor. The city's post-trial motions were denied and this appeal followed. We find the points raised by the city are unmeritorious.
Under the "relation-back" approach, for limitations considerations, the addition of a party is allowed if it can be said that the new and former parties have an identity of interest so as to not prejudice the opponent by the addition. R.A. Jones & Sons, Inc. v. Holman, 470 So.2d 60 (Fla. 3d DCA 1985), review dismissed, 482 So.2d 348 (Fla. 1986); see Williams v. United States, 405 F.2d 234 (5th Cir.1968). In the instant case, the Cisneroses waived any loss of services claim and sought solely the medical expenses they had incurred. For a significant period of time the city was aware of the outstanding medical bills and thus had fair notice that such a claim was involved. Accordingly, we conclude that the Cisneroses were properly permitted to amend their claim even though that claim otherwise would have been barred by the statute of limitations.
Under this same analysis, we find that the trial court properly permitted the Cisneroses to amend the complaint notwithstanding the city's defense of noncompliance with section 768.28(6), Florida Statutes (1993), which requires notice to the Department of Insurance. It is uncontroverted that by the Cisneros' original claim letter, the city was placed on notice of the boy's medical bills. This written notice effectively described the occurrence giving rise to the distinct cause of action, and thus, as the trial court concluded, acted as sufficient written notice for maintaining the added claim. See Franklin v. Department of Health & Rehab. *1275 Serv., 493 So.2d 17 (Fla. 5th DCA 1986); see L.S.T., Inc. v. Crow, 834 F. Supp. 1355 (M.D.Fla. 1993), reversed on other grounds, 49 F.3d 679 (11th Cir.1995).
Next, the trial court properly concluded that the defense of express assumption of risk was not a bar to this action. The Florida Supreme Court has held that knowing and voluntary participation in contact sports constitutes an express assumption of risk "essential to protect the other participants from unwarranted liability for injuries due to bodily contact inherent in the sport." Mazzeo v. City of Sebastian, 550 So.2d 1113, 1116 (Fla. 1989). See also Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309 (Fla. 1986). "When a participant [in a contact sport] volunteers to take certain chances he waives his right to be free from those bodily contacts inherent in the chances taken. Our judicial system must protect those who rely on such a waiver and engage in otherwise prohibited bodily contacts." Zalkin v. American Learning Sys., Inc., 639 So.2d 1020 (Fla. 3d DCA 1994), citing Kuehner v. Green, 436 So.2d 78, 80 (Fla. 1983). The decision to permit Ricky to participate in the instant sporting event, standing alone, however, could not act as a complete defense to all claims of negligence. Here, Ricky was a minor; had he been sui juris, his participation alone in this contact sport might well have supported the defense of express assumption of risk.
While Ricky testified he knew the weights of the Tiger players, the thrust of his claim was that the coach had acted in direct contravention of his promise to Mr. Cisneros and thus had failed to properly supervise the sport. After listening to the testimony, the jury was free to conclude that the coach had promised Mr. Cisneros that Ricky would not play under such conditions. Although the Cisneros may have chosen to waive those risks inherent in the sport itself  the risks that arise from the bodily contact with other players  those risks did not include negligent supervision, the claim at issue herein. See, e.g., Nova Univ., Inc. v. Katz, 636 So.2d 729 (Fla. 4th DCA 1993), review denied, 639 So.2d 979 (Fla. 1994).
In sum, the risks that the Cisneros assumed by their son's participating in the sport "did not absolve [the coach of his] responsibility for proper instruction and to properly supervise the activity." Zalkin, 639 So.2d at 1021. Thus, the claims were properly evaluated by the jury under principles of comparative negligence. Mazzeo, 550 So.2d at 1117.
Finally, the foreseeability of the injury in light of the city's actions was for the jury to decide. Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983). The testimony at trial was that the weight differential was what overwhelmed Ricky and caused him to fall backwards, whereupon Tiger team members piled upon him. It was for the jury to conclude whether, under these facts, the coach's actions were the proximate cause of Ricky's injury.
Accordingly, the order under review is affirmed.
NOTES
[1] Due to the absence of a signed consent form, the terms and conditions of that alleged agreement were not argued. Under certain circumstances, however, such express waivers of liability can prove valuable tools for sports promoters as well as municipalities seeking to provide athletic activity without exposure to liability for the negligent acts of their employees. Included within the Supreme Court's definition of express assumption of risk are express contracts not to sue for injury or loss which may thereafter be occasioned by the covenantee's negligence as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport. Blackburn v. Dorta, 348 So.2d 287, 290 (Fla. 1977). While exculpatory clauses are not looked upon with favor, they are valid and enforceable when clear and unequivocal. Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla. 1979); University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973); L. Luria & Son, Inc. v. Alarmtec Int'l Corp., 384 So.2d 947 (Fla. 4th DCA 1980); Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972). A number of cases have affirmed the validity of such contracts for use by those concerned with liability for the myriad injurious circumstances which can arise in the context of sporting events. See DeBoer v. Florida Offroaders Driver's Ass'n, 622 So.2d 1134 (Fla. 5th DCA 1993) (scope of release and waiver signed by spectator at automobile racing event was sufficient to limit race promoter's liability for spectator's death after she walked across racetrack and was struck by racing car; reasonable person would have heeded warning and release to stay out of restricted area or risk injury without liability on part of promoter.) Banfield v. Louis, 589 So.2d 441 (Fla. 4th DCA 1991) (court affirmed summary judgment in favor of sponsors, organizers, and promoters of triathlon, including City of Fort Lauderdale; where race contestant had signed waiver which informed participant:

WAIVER: READ CAREFULLY BEFORE SIGNING
In consideration for the acceptance of my entry, I, for my heirs, executors and administrators, release and forever discharge the United States Triathlon Series (U.S.T.S.) CAT Sports, Inc., Anheuser-Busch, the Quaker Oats Company, the city, county, state or district where the event is held and all sponsors, producers, their agents, representatives, successors and assigns of all liabilities, claims, actions, damages costs or expenses which I may have against them arising out of or in any way connected with my participation in this event, including travel to or from this event, and including injuries which may be suffered by me before, during or after the event. I understand that this waiver includes any claims based on negligence, action or inaction of any of the above parties.)
Theis v. J & J Racing Promotions, 571 So.2d 92 (Fla. 2d DCA 1990), review denied, 581 So.2d 168 (Fla. 1991) (release and waiver of liability agreement executed by race car driver prior to race in which he was killed was sufficiently broad and specific to protect racetrack operator and driver of car that was improperly on track from liability for their own negligence, even if their actions constituted gross negligence. In pertinent part, release provided that those persons signing the release agreed as follows:
1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the event and each of them, their officers and employees, all for the purposes herein referred to as "releases", from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any and all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releases or otherwise while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event;
... .
3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releases or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the event.
EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.
THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made. (Emphasis supplied.))