BENTON, Judge.
Brian Donaldson and Linda Donaldson, his wife, contend that the trial court erred in submitting to the jury the question whether Mr. Donaldson assumed the risk of a back injury he alleged he sustained at Dwight Cenac’s hands. They argue that the jury should have been instructed instead to assess responsibility for the alleged injury in keeping with principles of comparative negligence. We agree, and reverse and remand for a new trial.*
Our supreme court has ruled that, with certain narrow exceptions, even when a person “knows of an open and obvious danger ... assumption of the risk may not be invoked as a total bar to recovery.” Kendrick v. Ed’s Beach Service, Inc., 577 So.2d 936, 938 (Fla.1991). The present case poses questions about the scope of the exception recognized in Kuehner v. Green, 436 So.2d 78 (Fla.1983), for “express assumption of risk ... in which actual consent exists such as where one voluntarily participates in a contact sport.” Blackburn v. Dorta, 348 So.2d 287, 290 (Fla.1977).
Appellants made clear to the trial court their contention that assumption of the risk was not available as a defense in the present case. In the order on pretrial conference, the trial court required counsel “to be prepared to argue law as to the availability of th[e] defense” of assumption of the risk. The question was taken up more than once afterwards and the charge conference ended with the trial court’s overruling plaintiffs’ objection to the verdict form. The trial court concluded that, if — as in fact occurred — the jury answered the first question in the affirmative, and so returned a verdict on that basis, “there’s no problem about that, that is assumption of the risk.”
Evidence was adduced at trial from which the jury might have concluded that the Don-aldsons were guests in the Cenac home one evening in October of 1990, when Mr. Donaldson complained of back pain; that Mr. Cenac recounted his own bouts with back pain, and the alleviation of symptoms a prison minister had effected by performing a certain maneuver; that Mr. Cenac offered to *230 perform the maneuver — described by witnesses as a “full nelson” — on Mr. Donaldson; that, after Mr. Donaldson agreed, Mr. Cenac performed the maneuver; and that Mr. Donaldson experienced immediate, severe pain, fell to the floor, and eventually had to undergo surgery, all on account of Mr. Cenac’s ministrations.
The jury found for the defendant, by answering the first of four questions put to it on the verdict form, with a check placed in the blank beside “yes.” The first question asked:
Did BRIAN DONALDSON know of the existence of the danger complained of; realize and appreciate the possibility of injury as a result of such danger; and, having a reasonable opportunity to avoid it, voluntarily and deliberately expose himself to the danger complained of?
As instructed in the event of an affirmative answer to the first question, the jury did not answer a later question on the verdict form asking whether any negligence on Mr. Ce-nae’s part was a legal cause of damage to the Donaldsons.

Doctrinal Merger

Before Florida adopted the doctrine of comparative negligence, assumption of the risk was recognized, not only as a defense that might preclude recovery in suits by employees against employers, see Sonnenborn v. Gartrell, 189 So.2d 621 (Fla.1966), but also as a possible bar to recovery in tort actions generally. See Byers v. Gunn, 81 So.2d 723 (Fla.1955). Then, in the seminal case of Blackburn, the supreme court held
that the affirmative defense of implied assumption of risk is merged into the defense of contributory negligence and the principles of comparative negligence enunciated in Hoffman v. Jones, [280 So.2d 431 (Fla.1973) ], shall apply in all cases where such defense is asserted.
348 So.2d at 293. But the Blackburn court contrasted implied assumption of the risk with “express assumption of the risk,” and said:
Included within the definition of express assumption of risk are express contracts not to sue for injury or loss which may thereafter be occasioned by the covenan-tee’s negligence as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport.
Id. at 290. To be informed, “actual consent” requires actual knowledge of the risk assumed.
Preliminary to any finding of express assumption of risk is a showing that the particular risk was known or should have been known and appreciated by the person injured. O’Connell v. Disney World Co., 413 So.2d 444, 448 (Fla. 5th DCA 1982); DePew v. Sylvia, 265 So.2d 75, 76 (Fla. 1st DCA 1972); See also Bartholf v. Baker, 71 So.2d 480 (Fla.1954); Restatement of the Law of Torts, Second, § 496D.
For express assumption of risk to be valid, either by contract or by voluntary participation in an activity, it must be clear that the plaintiff understood that she was assuming the particular conduct by the defendants which caused her injury. Restatement of Torts, Second, § 496B, comment d. No agreement to assume unknown risks shall be inferred.
Van Tuyn v. Zurich Am. Ins. Co., 447 So.2d 318, 320-21 (Fla. 4th DCA 1984). Assumption of the risk cannot apply unless a plaintiff actually knows or in law is deemed to know that a particular risk — here the risk of negligent injury — was present, and understood the nature of the risk.

Exception Delineated

Although the player of a contact sport does not ordinarily make express pregame agreements regarding legal redress for possible injury, the mere act of voluntary participation is treated as the equivalent of an express waiver of the “right to be free from those bodily contacts inherent in the [contact sport.]” Kuehner, 436 So.2d at 80 (upholding a judgment in favor of Green, although Green’s negligence caused Kuehner’s injuries, where “Kuehner had been injured as the result of a karate takedown maneuver executed by Green during a sparring exercise,” id. at 79). The athlete is deemed to know, appreciate the nature of,-and assume *231 the risk of negligent injury by the other participants in a contact sport.
While certain district court decisions — all decided before the supreme court’s decision in Mazzeo v. City of Sebastian, 550 So.2d 1113, 1116-17 (Fla.1989) — lend some support to appellee’s contention that the Kuehner exception can apply in settings other than contact sports, appellee’s reliance on Van Tuyn is clearly misplaced. There the court reversed summary judgment for the owner of “Club Dallas,” rejecting the defense “assertion that there was an express assumption of the risk, both under the terms of the release plaintiff signed and arising out of actually riding the mechanical bull.” 447 So.2d at 320. The court held that even a signed waiver reciting that the plaintiff assumed “any and all risk” of riding a mechanical bull did not suffice to demonstrate that the plaintiff fully appreciated the risks involved, or that the plaintiff agreed to assume the risk of negligent operation of the mechanical bull. Id. at 320-21.
The public policy in favor of “legitimate recreation” does not preclude recovery for injuries negligently sustained in noncontact sports. The supreme court in Mazzeo rejected the trial court’s conclusion that a swimmer expressly assumed the risk of injury inherent in diving into shallow water.
Accepting the jury’s findings as representing true facts, there is little doubt that Mazzeo engaged in foolhardy conduct.... On the other hand, it seems equally clear that she did not dive with the intention of injuring herself, and she did not expressly agree to absolve the city of any liability if she did. While recognizing the danger, she dived in the improvident belief that she would be able to avoid being hurt. Under Blackburn, Mazzeo’s conduct is properly characterized as implied secondary assumption of risk which is unreasonable ... in nature_ As such, Mazzeo’s conduct must be evaluated by the jury under principles of comparative negligence.
550 So.2d at 1116-17. Accord Kendrick (diver did not expressly assume risk of injury); Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309 (Fla.1986) (jockey whose horse bolted through imprudently located exit gate did not expressly assume risk of injury caused by track’s layout); Nova Univ., Inc. v. Katz, 636 So.2d 729 (Fla. 4th DCA 1993), review denied, 639 So.2d 979 (Fla.1994) (cheerleader performing stunt without “spotters” did not expressly assume the risk of inadequate instruction and supervision and did not expressly agree to absolve school of its responsibility).
The decision in Carvajal v. Alvarez, 462 So.2d 1156 (Fla. 3d DCA 1984) (holding that risk of injury was expressly assumed by engaging in “aberrant” horseback riding — two persons in a saddle designed for one) cannot be reconciled with the view the supreme court later expressed in Mazzeo that “aberrant conduct in noncontact sports” should not be equated with express assumption of risk. 550 So.2d at 1116. The decision in Robbins v. Department of Natural Resources, 468 So.2d 1041 (Fla. 1st DCA 1985) was expressly disapproved by the Mazzeo court, 550 So.2d at 1117, and the district court’s decision in Ashcroft v. Calder Race Course, Inc., 464 So.2d 1250 (Fla. 3d DCA 1985), was reversed. 492 So.2d 1309.
We have discovered only one Florida decision — again a district court decision antedating Mazzeo — that has found the Kuehner exception applicable in a nonrecreational context. In Black v. District Bd. of Trustees, 491 So.2d 303 (Fla. 4th DCA 1986), review denied, 500 So.2d 543 (Fla.1986), the court held that a police trainee expressly assumed the risk of an injury which occurred during a training exercise that required role playing. Seeking to wrest an ersatz revolver from a fellow trainee assigned to play a “bad guy,” Ms. Black was the victim of the surprised fellow trainee’s spirited resistance. The court drew an analogy to contact sports: “[P]articipation in police training, no less than participation in sports, is an activity which is beneficial to society as a whole.” Id. at 306.
Both police training and contact sports require vigorous participation, unrestrained by the specter of tort judgments for nothing more than playing by the rules. The Kueh-ner exception to the general rule abolishing assumption of risk announced in Blackburn *232 “is based on waiver and is essential to protect the other participants from unwarranted liability for injuries due to bodily contact inherent in the sport.” Mazzeo, 550 So.2d at 1116. Since Black was decided, moreover, the supreme court has refused to expand the Kuehner exception, saying: “To expand this exception to include aberrant conduct in non-contact sports collides with the merger of assumption of risk into comparative negligence, which was accomplished in Blackburn.” Id.

Exception Inapplicable

We decline to expand this exception still further. We cannot accept the contention that the rationale underlying the decision in Kuehner requires affirmance here. The Kuehner court stated:
If contact sports are to continue to serve a legitimate recreational function in our society express assumption of risk must remain a viable defense to negligence actions spawned from these athletic endeavors.
Id. We see important differences between contact sports which are played according to widely understood rules and “serve a legitimate recreational function,” and the type of amateur chiropraxis alleged here.
Mr. Donaldson’s acceptance of Mr. Cenac’s offer may be said to evince a want of care. In that regard, Mr. Donaldson resembles Ms. Mazzeo who dove into shallow water. But nothing suggests that Mr. Donaldson anticipated or intended injury any more than Ms. Mazzeo did, or that he expressly agreed to absolve Mr. Cenac of liability, in the event of injury. Here, as in Mazzeo, the plaintiffs conduct “is properly characterized as implied secondary assumption of risk which is unreasonable ... in nature.... As such, ... [the] conduct must be evaluated by the jury under principles of comparative negligence.” 550 So.2d at 1116-17. On remand, the jury should be 'instructed to determine the parties’ comparative negligence and assess the responsibility of each accordingly.
Reversed and remanded.
VAN NORTWICK, J., concurs.
BOOTH, J., dissents with opinion.

 Appellants also contend that defense counsel in closing argument adverted to offers of settlement not of record, offered his personal opinion as to the facts of the case, and told the jury that “It's not- uncommon for plaintiff's attorneys to put up some ridiculous number 50 times what they really do expect to get....” While it is unnecessary to our decision, we agree the argument complained of was improper, see Bellsouth Human Resources Admin., Inc. v. Colatarci, 641 So.2d 427 (Fla. 4th DCA 1994), and caution against any repetition on remand.